UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In Re:

    CORI DUVALL,

                            Debtor.

BK Case No. 2-19-20179

CORI DUVALL

                            Plaintiff,

vs.

COUNTY OF ONTARIO, NEW YORK, and
"JOHN DOE" and "JANE DOE."

                            Defendants.

Adv. Proc. No.: 19-2011

## MOTION IN LIMINE REGARDING ADMISSIBILITY
## OF EXPERT TESTIMONY OF VALUE OF ANNUITY

Defendant, County of Ontario (the "County"), by its attorney, Jason S. DiPonzio, Esq., states the following in support of its motion in limine, seeking a determination that expert testimony regarding the value of a settlement annuity will be admissible at the trial of the above adversary proceeding:

### PRELIMINARY STATEMENT

1.    The above adversary proceeding seeks to overturn an *in rem* tax foreclosure judgment, that had been lawfully conducted by the County pursuant to New York Real Property Tax Law ("RPTL") Article 11, as an alleged constructive fraudulent conveyance under Section 548.

2. The central questions to be tried in this case are: (a) was the Debtor insolvent or rendered insolvent on the date of the *in rem* foreclosure of the property in question; and (b) did the foreclosure of the property constitute reasonably equivalent value for purposes of Section 548.

3. The County files this motion *in limine* to permit the testimony of Javier Espinosa, Ph.D. at the trial of this adversary proceeding regarding the value of a settlement annuity ("Annuity") owned by the Debtor at the times relevant to this matter, as it pertains to the question of Debtor's insolvency on the date of the foreclosure.

4. Debtor has claimed that the Annuity is exempt and therefore cannot be included in an analysis of her insolvency, by virtue of Debtor listing the Annuity on her Schedule of Exemptions (with the value of the Annuity listed as "Unknown"), and then there being no formal objection to this claim of exemption filed on or before 30 days after the close of the 341 meeting of creditors. However, this argument must be rejected for the following reasons:

    a. The "exemption by default" claimed by Debtor that may have occurred in 2019 has no relevance to the central question to be tried, i.e., whether Debtor was insolvent as of the foreclosure date of March 7, 2017, and whether Debtor could have exempted the Annuity as of March 2017; and

    b. Principles of equity should not permit Debtor to exempt an asset with a value in excess of $1 Million based upon an "exemption by ambush" under the insolvency analysis required to be conducted by the court in this Section 548 action.

## BACKGROUND

5. Prior to March 7, 2017, Debtor was the owner of real property located at 9097 County Road 14, West Bloomfield, New York (the "Property").

6. As a result of unpaid taxes of approximately $22,434.40 assessed to the Property, the County commenced in rem tax foreclosure proceedings against the Property, resulting in the entry of a default judgment of foreclosure in Ontario County Supreme Court on March 7, 2017.

7. The default judgment of foreclosure stripped Debtor of her right, title and interest in and to the Property by operation of RPTL §1136 and awarded title to the Property to the County in full satisfaction of the outstanding tax liens.

8. March 7, 2017 is the date of the "transfer" for purposes of the Section 548 cause of action alleged by Debtor.

9. In May 2017, Debtor commenced litigation in state court seeking to overturn the default judgment of foreclosure. Debtor's state court proceedings were dismissed in June 2017 by Ontario County Supreme Court and this determination was affirmed by the Appellate Division, Fourth Department in February 2019. See Matter of Foreclosure of Tax Liens by County of Ontario (DuVall), 169 A.D.3d 1508 (4th Dep't 2019)

10. On March 1, 2019, Debtor filed her Chapter 13 Bankruptcy petition. On March 14, 2019, Debtor filed her bankruptcy schedules. A copy of Debtor's Chapter 13 petition and schedules are attached as **Exhibit A**.

11. On April 25, 2019, Debtor filed her adversary proceeding complaint. A summons was issued by the Court and the County was served on May 3, 2019. A copy of Debtor's adversary proceeding complaint is attached as **Exhibit B**.

12. The County answered the adversary proceeding complaint on May 20, 2019. A copy of the County's answer is attached as **Exhibit C**.

13. Prior to the commencement of this Adversary Proceeding, a 341 meeting of creditors was scheduled to take place on April 15, 2019. The 341 meeting of creditors was closed on April 16, 2019. Relevant portions of the bankruptcy docket are attached as **Exhibit D**.

14. The County was served with the summons and complaint in this adversary proceeding approximately 17 days after the 341 meeting of creditors was closed.

15. A Rule 16 conference was held in this action on June 26, 2019, with discovery to be conducted thereafter. Documentary discovery was exchanged in 2019, and a deposition of the Debtor was conducted in February 2020.

16. This adversary proceeding was scheduled for trial on March 24, 2020, however has been postponed without date due to the COVID-19 pandemic.

17. The two questions to be tried regarding Debtor's Section 548 claims are: (a) was the Debtor insolvent or rendered insolvent as of March 7, 2017; and (b) did the extinguishment of the tax liability assessed to the Property constitute reasonably equivalent value for the foreclosure of Debtor's interest in the Property.

## DEBTOR'S SETTLEMENT ANNUITY

18. Debtor's bankruptcy schedule A/B disclosed that she is the beneficiary of an annuity (the "Annuity"), described as follows:

> **From settlement of claim against New York State Paid $2014 a month through January 2019. Withdrawl (sic) made in November 2018 which temporarily ceased annuity payments. Annuity esumes (sic) with half payments in 2020. Will go back to full payments in 2030.**

4

19. According to Debtor's Schedule A/B, the value of the Annuity is listed as "Unknown." See **Exhibit A**.

20. In January 2020, copies of the Annuity, as well as the 2011 Stipulation of Settlement (the "Settlement"), which provided for the purchase of the Annuity by the State of New York in satisfaction of Debtor's claims then pending in the New York State Court of Claims, Claim No. 111417 were provided as part of the ongoing discovery process. A copy of the Stipulation of Settlement is attached as **Exhibit E**. A copy of the Qualified Assignment Agreement with a copy of the Annuity is attached as **Exhibit F**.

21. The Settlement and the Annuity provided for the following in exchange for the release of Debtor's claims against the State if New York:

a. The State of New York would purchase the Annuity for a single-premium of $800,000, which provided for the following stream of payments over the course of Debtor's life:

i. $1,824.94, payable monthly for life guaranteed for 50 years, commencing on January 1, 2012, increasing at a rate of 2.50% compounded annually;

ii. $7,500.00, payable monthly for a guaranteed two-month period, commencing on July 24, 2026 (totaling $15,000);

iii. $10,000.00, payable monthly for a guaranteed two-month period, commencing on July 24, 2013 (totaling $20,000);

iv. $12,500.00, payable monthly for a guaranteed two-month period, commencing on July 24, 2036 (totaling $25,000); and

v. $50,000.00, payable monthly for a guaranteed two-month period, commencing on August 24, 2041 (totaling $100,000).

b. In the event Debtor failed to survive the period guaranteed payments under the Annuity, such payment would be made to Debtor's estate or to a beneficiary of her choosing;

c. The State of New York would pay Debtor's attorneys' fees incurred in prosecuting the claims against the State of New York in the amount of $950,000.00.

22. The Stipulation of Settlement specifically stated that the payments under the Annuity were for "damages on account of physical injury or physical sickness within the meaning of section 104(a)(2) and 130(c) of the Internal Revenue Code of 1986 ("IRC"), as amended. See **Exhibit E, p.3, par. 2.**

23. IRC Section 104(a)(2) excludes from the definition of gross income damages received for "personal physical injuries or physical sickness." IRC Section 130(c) defines a "qualified assignment" as any assignment of a liability to make periodic payments as damages "on account of personal injury or sickness."

24. The Settlement and the Annuity are completely devoid of any language that indicates that any portion thereof is intended to compensate for future lost earnings.

25. In 2018, Debtor contracted with J.G. Wentworth Originations, LLC for the assignment of a portion of the monthly payments that Debtor was to receive under the Annuity, contingent upon receiving court approval pursuant to New York General Obligations Law §5-1701.

26. A petition was presented to the Ontario County Supreme Court for this purpose in June 2018. An order was issued by that court in November 2018, approving the proposed assignment. A copy of Debtor's assignment agreement with J.G. Wentworth, together with the order approving same is attached as **Exhibit G.**

27. Under the assignment, Debtor transferred monthly payments of $2,169.28, beginning on January 1, 2019 through and including December 1, 2019, and then monthly payments of $1,116.00 beginning on January 1, 2020 through and including December 1, 2031, increasing 2.5% per year. In exchange, Debtor received a one-time lump-sum payment of $137,650.00. See **Exhibit G**.

## THE COUNTY'S EXPERT WITNESS DISCLOSURE

28. After reviewing all of the documentary evidence relevant to the Annuity that had been disclosed in January 2020 and deposing Debtor in February 2020, the County engaged Javier Espinosa, Ph.D., professor of economics at Rochester Institute of Technology, as an expert witness to calculate the present value of the Annuity as of March 7, 2017.

29. Dr. Espinosa's expert witness report was disclosed on March 6, 2020. Upon analyzing the guaranteed payments under the Annuity along with Debtor's reasonable life expectancy, Dr. Espinosa calculated the present value of the Annuity as of March 7, 2017 as being between $1,197,344.29 and $1,375,918.71. A copy of Dr. Espinosa's expert witness report is attached as **Exhibit H.**

## DEBTOR'S CLAIM OF EXEMPTION

30. According to Schedule C of Debtor's bankruptcy schedules, Debtor has claimed 100% of the fair market value of the Annuity to be exempt under Section 522(d)(11)(E), listing this fair market value as "Unknown."

31. Section 522(d)(11)(E) provides an exemption for a debtor's right to receive, or property that is traceable to "a payment in compensation of loss of future earnings of the debtor . . . to the extent reasonably necessary for the support of the debtor and any dependent of the debtor."

32. Despite the plain language of the Settlement and the Annuity, Debtor did not claim that the Annuity is entitled to an exemption under Section 522(d)(11)(D), which provides an exemption for "a payment, not to exceed $25,150, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor."

33. Debtor, relying upon Rule 4003(b), is claiming an absolute right to the exemption she claimed under Section 522(d)(11)(E), arguing that no party in interest objected to that claim of exemption within 30 days after the 341 meeting of creditors was closed. In this matter, an objection under Rule 4003(b) would have needed to be filed before May 15, 2019 – approximately 20 days after commencement of this adversary proceeding and less than 2 weeks after the County was served with a summons and complaint.

34. Stating Debtor's argument another way, Debtor is claiming entitlement to the entire fair market value of the Annuity, which is in excess of $1 Million, where: (a) the value of the Annuity was not disclosed in Debtor's bankruptcy schedules, nor were documents underlying the true value and nature of the Annuity disclosed until January 2020; and (b) there are serious legal impediments to applying the exemption claimed by Debtor (or any other available exemption under Section 522) to the full value of Annuity.

35. The County now files this motion *in limine* seeking resolution as to whether Debtor's claim that the Annuity is exempt under Section 522(d)(11)(E) may be litigated and whether the expert testimony of Dr. Espinosa pertaining to the value of the Annuity may be presented in the upcoming trial of these proceedings.

## THE COUNTY'S MOTION IN LIMINE

36. Debtor's argument that she is entitled to an "exemption by ambush" for the Annuity must be rejected for 2 primary reasons:

   a. Debtor's bankruptcy petitions and schedules filed in March 2019 are not probative as to the question of Debtor's insolvency, necessarily including the question of whether the Debtor "could have exempted" the Annuity, more than 2 years earlier in March 2017; and

   b. Principles of equity and fairness dictate that a critical element of a litigated matter cannot be determined by an estoppel argument, particularly where critical details regarding the claimed exemption were not available at the time the 341 meeting of creditors was closed.

## DETERMINATION OF INSOLVENCY

37. One of the key questions to be determined at trial is whether Debtor was insolvent or rendered insolvent as of the date of the foreclosure of the Property. The critical date of this analysis is March 7, 2017, the date of entry of the foreclosure judgment.

38. The critical date of March 7, 2017 is 2 years prior to the filing of Debtor's Chapter 13 bankruptcy petition. The definition of the term "insolvent" is governed by Section 101(32), which states:

> The term "insolvent" means—
>
> (A) with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of—
>
> (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
>
> (ii) property that may be exempted from property of the estate under section 522 of this title.

## DEBTOR'S 2019 BANKRUPTCY FILING IS NOT DETERMINATIVE OF THE QUESTIONS OF INSOLVENCY AND EXEMPTIONS AS OF MARCH 7, 2017

39. It is well settled that the filing of a bankruptcy petition or an adjudication of insolvency is not determinative of a debtor's insolvency at an earlier date. Liberty Nat'l Bank v. Bear, 265 U.S. 365, 370 (1924) ("generally, an adjudication in bankruptcy in no way determines whether or not the debtor was insolvent at a time when a lien was obtained through legal proceedings against him"). See also O'Toole v. Karnani, 460 B.R. 379, 392 (Bankr. S.D.N.Y. 2011) (adversary proceeding alleging constructive fraudulent conveyance under Section 548: "The operative reference point for determining insolvency is the time at which the transfer took place . . . Therefore, insolvency of the transferor cannot be presumed from subsequent insolvency at a later point in time"); Kramer v. Chin, 492 B.R. 117, 126 (Bankr. E.D.N.Y. 2013) (same); Matson v. Strickland, 230 B.R. 276, 283 (Bankr. E.D.Va. 1999) ("Evidence of insolvency on the date of the alleged preference is the critical issue and proof of insolvency on any other date is insufficient. . . . Thus, proof by the Trustee that the Debtor was insolvent on the petition date does not translate into a finding of insolvency nine months earlier").

40. Because the analysis of whether Debtor was insolvent on March 7, 2017 must follow the "balance sheet test" outlined under Section 101(32), that is also the critical date as to what property Debtor ***could have*** exempted from property of the estate as of that date. See Kramer, 492 B.R. at 126.

41. On March 7, 2017, Debtor had not yet filed her bankruptcy petition and had not yet filed a schedule of claimed exemptions. No 341 meeting of creditors had been scheduled, let

alone had been conducted or closed. No 30-day window had even opened, let alone closed, to allow a formal objection to a claimed exemption.

42. In other words, Debtor's claimed exemption by default did not come into existence until more than 2 years after the operative date of March 7, 2017. For purposes of analyzing whether Debtor was insolvent as of March 7, 2017, the exemption by default did not exist, and based upon the lack of a bankruptcy filing as of that date, could not have existed. Therefore, the Court must analyze where the Debtor **could have** exempted the Annuity as of the earlier date of March 7, 2017.

43. It is also well settled that a Bankruptcy estate is created under Section 541 on the date of the filing of a bankruptcy proceeding and that a debtor's entitlement to exemptions in a bankruptcy case is determined as of the commencement of the case. In re Sheets, 69 B.R. 542 (Bankr.W.D.N.Y. 1987). See also, In re Ellis, 274 B.R. 782, 787 (Bankr. S.D.Ill. 2002).

44. Accordingly, just like a bankruptcy filing is not determinative of a debtor's insolvency at an earlier date, a debtor's claim to exemptions is not determinative as to whether a debtor *could have* exempted property at an earlier date.

45. Thus, the court must look at whether Debtor *could have* exempted the Annuity at that earlier date of March 7, 2017, based upon the facts underlying the Annuity and whether Debtor is legally entitled to claim the Annuity as exempt. See Wisotzke v. County of Ontario, 2011 Bankr. LEXIS 321 *21 ("Without determining the validity of Debtor's asserted exemption by ambush, this Court reads Section 522(h) as requiring the Bankruptcy Court to determine if Debtor 'could have' exempted the property in question, and an exemption by ambush does not satisfy the need for the Court to actually make that determination").

11

46. Other Bankruptcy Courts have rejected the argument that an exemption by ambush, like the one claimed by Debtor, cannot be used to satisfy whether a debtor "could have exempted" property at an earlier time. See e.g. In re Morgan, 149 B.R. 147, 152 (9th Cir. B.A.P. 1992) (Exemption by default under Section 522(l) held not to satisfy burden under Section 522(b) for purposes of lien avoidance motion. "Reliance by the exemption-by-default of §522(l) does not satisfy this burden"). See also Ryker v. Current, 315 B.R. 664, 673 (Bankr.D.N.J. 2004).

47. The language of the Annuity itself clearly demonstrates severe legal impediments to Debtor's claim that the entire value of the Annuity is exempt. Debtor has claimed that the Annuity is exempt under Section 522(d)(11)(E), which provides an exemption for a loss of future earnings. However, this claimed exemption defies that plain language of the Settlement and the Annuity, which specifically represent that the payments provided thereunder were compensation for "damages on account of physical injury or physical sickness" and contains no language to indicate that any portion of the Annuity was to compensate for future lost wages. See In re Chavis, 207 B.R. 845, 849 (Bankr.W.D.Pa. 1997) (Because we conclude that the policy is not a payment in compensation of future lost earnings and because §522(d)(11)(E) covers only payments in compensation for future lost earnings, we must reject Debtor's claim to exemption").

48. Additionally, the exemption afforded by Section 522(d)(11)(E), applies on the future post-petition lost earnings, and only to "the extent reasonably necessary for the support of the debtor and any dependent of the debtor." In re Jackson, 394 B.R. 8, 11 (Bankr. D.Conn. 2008).

49. Serious questions also exist as to how much of the Annuity is reasonably necessary for the support of Debtor and her dependents. The evidence demonstrates that Debtor assigned a

portion of the Annuity in exchange for a one-time lump-sum payment of $137,650.00. See **Exhibit G**. It follows that the assigned payments, at the very least, were not reasonably necessary for the support of Debtor and her dependents.

50. Even if the Court were to look towards the exemption afforded under Section 522(d)(11)(D), this exemption is capped at $25,150, and excludes damages for pain and suffering. See Chavis, 207 B.R. at 849. See also In re Romagno, 159 B.R. 439 (Bankr. S.D.N.Y. 1993).

51. Because the court must determine insolvency and exemptions as of a date 2 years prior to Debtor's bankruptcy filing, Debtor's 2019 bankruptcy filing and meritless claim to an exemption of her bankruptcy schedules do not satisfy her burden of proof.

52. Accordingly, the question of whether Debtor could have exempted the Annuity as of March 7, 2017 must be determined at the trial of this proceeding.

**EQUITY REQUIRES THAT THE QUESTIONS OF DEBTOR'S INSOLVENCY AND AVAILABLE EXEMPTIONS BE DETERMINED AT TRIAL**

53. Allowing Debtor's claim of "exemption by ambush" defies the principles of equity. This has been considered in the context of lien avoidance motions and has the same applicability in these circumstances. See e.g. Morgan, 149 B.R. at 152 ("Equity requires that the court consider the underlying basis for an exemption in the lien avoidance context. It is entirely appropriate that a debtor about to eliminate another's property rights be put to his or her proof, and not be permitted to rely on a technical estoppel which is at best only tangentially related to the lien avoidance issue in any event. In fact, despite the claim of exemption, a lien avoidance action may never be commenced. Thus, requiring a secured creditor to object to an exemption when it is claimed, rather than when the debtor seeks to avoid the lien, fosters unnecessary litigation and may hinder the debtor's fresh start.") See also In re Armenakis, 406 B.R. 589, 613 (Bankr.S.D.N.Y. 2009)

13

54. In this matter, Debtor filed her bankruptcy petition and schedule of exemptions in March 2019.

55. The schedule of exemptions omitted key facts pertaining to the Annuity, not only by listing its value as "unknown," but also by omitting all details pertaining to whether the Annuity was compensating Debtor for lost wages or for bodily injury.

56. A debtor under certain circumstances can commence an adversary proceeding under Section 548 within 2 years of the filing of a bankruptcy proceeding. Debtor did not commence this adversary proceeding until after the 341 meeting had been closed and did not serve process on the County until less than two weeks remained under the Rule 4003 deadline for filing objections to claimed exemptions.

57. Theoretically, a debtor could wait until after this 30-day window closed to file a Section 548 adversary proceeding. At this point in time, a defendant in an adversary proceeding would have no way of objecting to an exemption claim because this window would have closed before the defendant was even made a party to the action. In such a situation, a debtor would never be put to their proof on essential elements of a Section 548 cause of action and a defendant would never have an opportunity to litigate an essential element of a debtor's case. This would encourage Debtors to essentially "hide the ball" and take advantage of an exemption to which he or she is not legally entitled on the merits.

58. It is well-settled that statutes of limitations do not normally run against a defense. See In re Armenakis, 406 B.R. at 609 (statutes of limitations are available only as a shield and not a sword. "Specifically, the Supreme Court has stated that the 'purpose of . . . statutes of limitations is to keep stale litigation out of the courts . . . To use the statute of limitations to cut off the

consideration of a particular defense in the case is quite foreign to the policy of preventing the commencement of stale litigation.'" (citing United States v. Western Pacific R. Co., 352 U.S. 59, 72).

59. Here, the County is seeking to put Debtor to her proof that she was insolvent, as that term is defined by Section 101(32), as of March 7, 2017 and this analysis necessarily includes whether Debtor *could have* exempted the Annuity at that earlier time. The County does not seek to challenge whether the Debtor was insolvent or whether the Annuity was exempt at any time on or after the filing of Debtor's bankruptcy petition in March 2019; the County simply seeks to assert and prove its defense to this Section 548 action.

60. Precious few details regarding the Annuity were available at the commencement of this adversary proceeding, and were not provided until late 2019/early 2020, long after the 30-day window to object to a claimed exemption would have closed.

61. As was cautioned by the court in Morgan, if the court were to follow Debtor's arguments in favor of an "exemption by ambush," potential defendants in Section 548 cases would be incentivized to file generic objections to exemptions without adequate information to ascertain whether such objections were even meritorious. Potential defendants would need to have these objections held in abeyance until the 2-year statute of limitations under Section 548 expired, thereby slowing down the administration of cases in which a Section 548 adversary proceeding may ultimately never be commenced.

62. Accordingly, based upon principles of equity, the County should be permitted to raise the issue of Debtor's insolvency, necessarily including the propriety of exemptions claimed by the Debtor, at the trial of this adversary proceeding.

## CONCLUSION

63. Debtor's bankruptcy filing and filing of claimed exemption in March 2019 is not determinative of the questions pertaining to Debtor's insolvency and whether Debtor could have exempted the Annuity on March 7, 2017. Accordingly, evidence pertaining to the Annuity and its value must be permitted at the trial of this adversary proceeding.

64. Alternatively, principles of equity should permit the County to litigate the defense of Debtor's solvency as of March 7, 2017 at the upcoming trial of this matter.

Dated: June 30, 2020
      Rochester, New York

/s/ Jason S. DiPonzio
Jason S. DiPonzio, Esq.
*Attorney for the County of Ontario*
Office and Post Office Address:
950 Reynolds Arcade Building
16 East Main Street
Rochester, New York 14614
Telephone: 585-530-8515
Fax: 585-530-8518
E-mail: jdiponzio@diponziolaw.com

TO: Zachary J. Pike, Esq.
*Attorney for Debtor/Plaintiff*
Office and Post Office Address:
Legal Aid Society of Rochester
One West Main Street, Suite 800
Rochester, New York 14614