

**EXHIBIT E**

STATE OF NEW YORK
COURT OF CLAIMS



EXHIBIT
2
Computer Reporting Service
2 / 2 / 2020

FILED

JUL 2 1 2011

STATE COURT OF CLAIMS
ALBANY, N.Y.

JANE DOE

Claimant,

Hon. Nicholas V. Midey, Jr.

vs.

STATE OF NEW YORK,

Defendant.

**STIPULATION OF
SETTLEMENT
AND DISCONTINUANCE
WITH PREJUDICE**

Claim#111417



This Stipulation of Settlement and Discontinuance with Prejudice ("Agreement") is made and entered into this **29** day of June, 2011, by and between claimant and defendant.

### RECITALS

A.    Cori Duvall, now of full age and hereinafter referred to as "Duvall", has made claims against the State of New York for injuries arising out certain incidents which occurred between the dates of December 19, 2002 and December 31, 2002, while she was under the supervision and control of the State of New York through its agency or department of the Office of Children and Family Services, in a lawsuit in New York Court of Claims, entitled <u>Cori Duvall v. The State of New York,</u> Claim No. 111417 (the "State Claim").[1]

B.    Duvall has also made claims against Christopher Schworm, Merle Brandwene, Christine Rummler, Darcy Bown, Linda Bumpus, Thomas R. Hoeg, Lee Wynn, Edward Ausborn and Richard Sheridan, all of whom were employees or officers employed by the New York State Office of Children and Family Services, and who are alleged by Duvall to be liable for damages she sustained as a result of the incidents which occurred between the dates of December 19, 2002 and December 31, 2002, in a lawsuit in the United States District Court, Northern District of New York, entitled <u>Sealed Plaintiff v. Sealed Defendant No. 1, et al.,</u> Case No. 06-CV-0486 (Filed Under Seal) (the "Federal Action"). Attached hereto as Exhibit A is the Order dismissing the Federal Action.

---

[1] The State Claim includes allegations that Duvall was the victim of a sexual offense. Thus, Duvall is entitled to the privacy protections of Civil Rights Law Section 50-b. As a result, Duvall is referred to as "Jane Doe" in public Court papers and documents in this action.

C.    The State of New York will make payment pursuant to Paragraph 2 below on behalf of the State of New York, and Duvall agrees to discontinue the Federal Action and State Action and release and discharge the State of New York, Merle Brandwene, Christine Rummler, Darcy Bown, Linda Bumpus, Thomas R. Hoeg, Lee Wynn, Edward Ausbom and Richard Sheridan, all of whom are represented by the Attorney General of the State of New York, in full and final settlement of all claims which are the subject of the Federal Claim and State Claim. Since Christopher Schworm, who is not represented by the Attorney General of the State of New York, is not contributing to the settlement, he will not be released; however, the parties agree the other Defendants are not liable for any acts of Christopher Schworm.

**AGREEMENT**

The parties hereby agree as follows:

1.    <u>Release and Discharge</u>

In consideration of the payments called for herein, the Claimant (sometimes referred to herein as "Releasor") hereby fully releases and discharges the defendant, and said Party's past, present and future officers, agents, attorneys, insurers, servants, representatives, employees, subsidiaries, affiliates, artist, and assessors and successors in interest, and assigns, and all other persons, with whom any of the former have been, are now, or may hereinafter be affiliated, including but not limited to State of New York, Merle Brandwene, Christine Rummler, Darcy Bown, Linda Bumpus, Thomas R. Hoeg, Lee Wynn, Edward Ausbom and Richard Sheridan, with the exception of Christopher Schworm, for the reasons stated above, (sometimes referred to herein as "Releasee" or "Released Party") of and from monetary damages in the amount equal to the compensation set forth below in the section entitled "Payments". This release and discharge shall cover and include any and all past, present or future claims, demands, obligations, actions, causes of action, wrongful death claims, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether based on a tort, contract or other theory of recovery, and whether for compensatory or punitive damages, which the Claimant now has or which may hereinafter accrue or otherwise be acquired on account of or may in any way grow out of, or which are the subject of the claim and all related pleadings, including, without limitation, any and all known or unknown claims for damages to the Claimant, or any future personal injury and/or claim of any nature brought by anyone claiming to be the personal representative of

2

Claimant, which have resulted or may result from the alleged acts or omissions of the Defendant. The Claimant agrees to hold the Defendant harmless and to indemnify it from and against any and all damages that may be assessed against the Defendant by judgment or otherwise in favor of any other person or entity claiming to be a representative of the Claimant, or claiming to have been caused monetary damage by virtue of this claim and/or any claim brought in any other court, including the federal courts of this country. This release, on the part of the Claimant, shall be the final agreement between the Claimant and the Defendant, their assigns, and successors, save only the executory provisions of this Stipulation of Settlement.

2. <u>Payments</u>

In consideration of the release set forth above, the State of New York hereby agrees to cause to be made payable the following sums and in the following manner for damages on account of physical injury or physical sickness in a case involving physical injury or physical sickness within the meaning of section 104(a)(2) , and 130(c) of the Internal Revenue Code of 1986, as amended:

A. <u>Attorney Fees and Cash Payment</u>

Concurrently with the execution of this Agreement the State of New York agrees as part of this settlement to pay to Phillips Lytle LLP, as attorney for Duvall, the sum of or sums totaling $950,000.00, inclusive of disbursements and attorney's fees rendered on behalf of Duvall. Said payment shall include all of Duvall's costs and expenses resulting to Duvall or incurred by or on behalf of Duvall in connection with this claim and the settlement set forth herein. Each party hereto shall bear all attorneys' fees and costs, arising from the actions of its own counsel in connection with this claim, this Agreement, and all other matters in documents referred to herein, the filing of the claim, and all related matters.

The Defendant has no notice or knowledge of any outstanding liens. In the event of the existence of any outstanding liens, it is understood and agreed that the Claimant shall be responsible to satisfy any and all such liens and the Claimant shall indemnify and hold the Defendant harmless from any and all claims made by lienholders, whether such claims have been made or are in the future made.

### B. Future Payments

Subject to the other terms and conditions of the Settlement Agreement, the State of New York agrees to pay to Duvall the following guaranteed amounts:

Commencing on January 1, 2012, One Thousand, Eight Hundred Twenty-Four Dollars and Ninety-Four Cents ($1,824.94) payable monthly, for life, guaranteed for 50 years, increasing at a rate of 2.50%, compounded annually, with the last guaranteed payment on 12/1/2061.

Commencing on July 24, 2026, Seven Thousand, Five Hundred Dollars ($7,500.00), payable monthly, guaranteed for 2 months with the last guaranteed payment on August 24, 2026.

Commencing on July 24, 2031, Ten Thousand Dollars ($10,000.00), payable monthly, guaranteed for 2 months with the last payment on August 24, 2031.

Commencing on July 24, 2036, Twelve Thousand, Five Hundred Dollars ($12,500.00), payable monthly, guaranteed for 2 months with the last payment on August 24, 2036.

Commencing on July 24, 2041, Fifty Thousand Dollars ($50,000.00), payable monthly, guaranteed for 2 months with the last payment on August 24, 2041.

The State of New York agrees as part of this settlement to pay the sum of Eight Hundred Thousand Dollars ($800,000.00) to Pacific Life & Annuity Services, Inc. (the "Assignee") to fund the future payments pursuant to Paragraph 2.B. This amount is comprised of Seven Hundred Ninety-Nine Thousand, Seven Hundred Fifty Dollars ($799,750.00) annuity cost plus Two Hundred Fifty Dollars ($250.00) assignment fee.

### 3. Right to Purchase an Annuity

For its own convenience, the State of New York will fund its future payment obligation under paragraph 2.B. by the purchase of an annuity from **Pacific Life & Annuity Company**. Payment will be mailed directly by said company to the party to whom payment is due. Duvall shall be responsible for maintaining proper mailing address for said company.

4.   Qualified Assignment

The Parties hereto acknowledge and agree that the State of New York will make a "qualified assignment" to Pacific Life & Annuity Services, Inc. within the meaning of Section 130(c), of the Internal Revenue Code of 1986, as amended, of the State of New York's liability to make any future payment required herein. This assignment shall completely release and discharge the State of New York from such obligations hereunder as are assigned to the assignee, and the assignee shall be the sole obligor with respect to the obligation assigned. All other releases that pertain to the liability of the State of New York shall thereupon become final, irrevocable and absolute. Future periodic payment from the assignee cannot be accelerated, deferred, increased or decreased by Duvall, nor will the assignee's payment obligation be greater than the obligation of the party originally liable for payment and from whom the obligation was assigned. The assignee is not required to set aside funds for Duvall or to otherwise secure their obligation to them; nor is Duvall entitled to control the investment by the assignee of any monies to fund payment required to be made pursuant to this Agreement. The annuity acquired by the assignee pursuant to this assignment shall be and remain the sole property of the assignee and all rights of such ownership shall vest with the assignee. No part of any payment called for herein or any assets of the State of New York shall be subject to execution or any legal process for any obligation in any manner, nor shall the Duvall have the right or power to sell, mortgage, pledge, encumber, or anticipate the same, or any part thereof, by assignment or otherwise.

5.   Designation of Beneficiary

In the event Duvall fails to survive, guaranteed payments pursuant to paragraph 2.B. hereof shall be made to her estate. Duvall may request that this beneficiary designation be changed.

6.   Disclaimer of Liability

Duvall acknowledges acceptance of payment specified in this Stipulation of Settlement as a full and complete compromise of matters involving disputed issues; that neither payment of any sum by the State of New York nor the negotiations for this settlement (including all statements, admissions or communications) by the State of New York, or their attorneys or representatives shall be considered admissions by any of said parties; and that no past or present wrong doing on the part of the State of New York shall be implied by such payment or negotiations.

7.   Successors in Interest

The parties to this Stipulation of Settlement agree that it shall be binding upon and inure to the benefit of their executors, administrators, personal representatives, heirs, successors and assigns.

8.   Additional Documents

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement.

9.   Discontinuance of State Claim

It is hereby stipulated and agreed, by and between the undersigned counsel, the attorneys of record for all parties in interest to the above-entitled action, that whereas no party hereto is an infant or incompetent person for whom a committee has been appointed and no person not a party has an interest in the subject matter of the action, the State Claim be, and the same hereby is discontinued with prejudice, on the merits, and without costs, disbursements, sanctions, attorneys fees, or expenses to either party. This stipulation may be filed without further notice with the Clerk of the Court.

10.   Appeal

The Claimant and the Defendant agreed that there shall be no appeal from the Court's findings in this claim, and that this document shall constitute the sole Agreement between the parties relating to this claim.

11.   Discharge of Obligation

The obligation of the State of New York to make each Periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee named in Section 2 of this Stipulation of Settlement.

12.   Waiver of Attorney's Lien

It is understood and agreed that upon receipt of the drafts described in Section 2(A) and 2(B) the attorneys for the Claimant do hereby release and waive their lien for services upon the above

named Claimant's cause of action, claim, verdict, report, judgment, determination, or settlement in favor of said Claimant which they have thereon, under and by virtue of Section 475 of the Judiciary Law. The attorneys for the Claimant further represent that there are no other attorneys having a lien for services render to Claimant pursuant to the provision of Section 475 of the Judiciary Law or otherwise.

13. Stipulation of Discontinuance with Prejudice.

The parties hereto hereby stipulate and agree that whereas all the parties to the above entitled action are adults or corporations and no person not a party has an interest in the subject matter, the above-entitled action be, and the same hereby is, settled, and upon payment of the sums set forth in Section 2 above, is discontinued with prejudice.

14. Warranty of Capacity to Execute Agreement.

The Claimant represents and warrants that no other person or entity has or has had any interest in the claims, demands, obligations, or causes of action referred to in this Agreement except as otherwise set forth herein and that Claimant has the sole right and exclusive authority to execute this Agreement and receive the sum or sums specified in it; and that Claimant has not sold, assigned, transferred, conveyed or otherwise disposed of any of the claims, demands, obligations, or causes of action referred to in this Agreement.

15. Representation of Comprehension of Document.

In entering into this Agreement, the Claimant represents that Claimant has read the terms of this Agreement and that those terms are fully understood and voluntarily accepted by Claimant. In entering into this Agreement, Claimant has retained and consulted with Claimant's own independent attorneys selected by Claimant of Claimant's own free will, and has fully and freely consulted with them on matters relating to this settlement and its terms and conditions. Claimant acknowledges that this Agreement has been negotiated by the respective parties through counsel. The parties to this Agreement contemplate and intend that all payments set forth in Section 2 above constitute damages received on account of personal physical injuries or physical sickness, arising from the occurrence, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. The Claimant warrants, represents, and agrees that the Claimant is not relying on the advice of the

7

Defendant, or anyone associated with Defendant, including their attorneys and the insurance broker placing the annuity contact, as to the legal, tax, financial or other (favorable or adverse) consequences of any kind arising out of this Agreement for which the Claimants is advised to obtain independent professional advice. The Claimant acknowledges that neither the Defendant nor its legal, insurance or structured settlement representative has or will refer Claimant to any advisor, attorney, or firm for such professional advice. Accordingly, the Claimant hereby release and hold harmless the Defendant, and any and all counsel or consultants for the Defendant from any claim, cause of action, or other rights of any kind which the Claimant may assert because of the legal, tax or other consequences of this Agreement. Claimant represent and warrant that Claimant have read and discussed this Agreement fully with Claimant's attorneys and fully understand its terms and conditions, and voluntarily accepts them as Claimant's own free and voluntary act.

16.    Governing Law.

This Agreement shall be construed and interpreted in accordance with the laws of the State of New York.

17.    Multiple Counterparts.

This Agreement may be executed by the parties in multiple counterparts (although not required) and all of such counterparts so executed shall collectively constitute this one Agreement and shall be deemed to establish this one Agreement.

18.    Effectiveness.

This Agreement shall be executed immediately, but shall only become effective after being "SO ORDERED" by the Court. By his or her signature below, each party represents and warrants that he or she has the full authority to bind the person, persons or entity for whom execution of this Agreement is being made.

19.    Captions and Paragraph Headings, Construction.

Captions and paragraph headings used in this Agreement are for convenience only and are not a part of this Agreement and shall not be used in construing it. The terms, conditions and other provisions of this Agreement have been negotiated between the parties, with each party having had the

benefit of its own legal counsel. The construction and interpretation of any clause or provision of this Agreement shall be construed without regard to the identity of the party that prepared this Agreement, and no presumption shall arise as a result that this Agreement was prepared by one party or the other.

20.    Severability.

In the event that any one or more of the provisions of this Agreement shall be held invalid, illegal or unenforceable in any respect by a court of competent jurisdiction, the validity, legality and enforceability of the remaining provisions of this Agreement shall not in any way be affected or impaired thereby.

21.    Release.

The parties hereby acknowledge and agree that the releases set forth in Section 1 hereof is a complete release and discharge.

Attorneys for Claimant:

Executed at Rochester, NY, this 29th day of June, 2011.

Phillips Lytle LLP

By_____
      Chad W. Flansburg, Esq.

Defendant:

Executed at Utica NY, this 27th day of June, 2011.

Attorney General of the State of New York

By_____
      G. Lawrence Dillon, Esq.
      Assistant Attorney General

9



**EXHIBIT F**

EXHIBIT
3
Computer Reporting Service
2 12 2020



# PACIFIC LIFE
## & ANNUITY SERVICES, INC.

## Qualified Assignment Agreement
### In Accordance With Internal Revenue Code Section 130

"Claimant(s)": Cori DuVall

"Assignor(s)": The State of New York

"Settlement Agreement": Stipulation of Settlement and discontinuance w/prejudice 7/11/11

[Date and title of settlement agreement, order or other document embodying
the Assignor's obligation to make the agreed periodic payments]

"Assignee": Pacific Life & Annuity Services, Inc.

"Annuity Issuer": Pacific Life & Annuity Company

"Effective Date": OCT 18 2011

This Qualified Assignment Agreement is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A. Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 11 of this Agreement (the "Periodic Payments"); and

B. Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1. **Assignment and Assumption.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

   i. damages (other than punitive damages), whether by suit or agreement, or

   ii. compensation under a workers' compensation act,

   on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to an FDIC-insured depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity.

6. **Discharge of Liability.** The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

   i. Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

   ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 6891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

   No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

9. **Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority) or if it is determined in any such final order that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i)     This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of New York;[1] provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii)    This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

---

[1] In choosing governing law the parties should be aware that the effectiveness of both contractual and "legal" restriction on assignment of rights to receive future Periodic Payments—including (i) contractual restrictions integral to the intended tax treatment of periodic payments and the annuities held as qualified funding assets and (ii) statutes, regulations and "rule[s] of law" prohibiting, restricting or requiring consent for assignments—may be limited (unintentionally) by sweeping override provisions enacted in §§ 9-406 and 9-408 of Revised Article 9 of the Uniform Commercial Code, which took effect in most states in July, 2001. Most states have enacted amendments that make the overrides in §§ 9-406 and 9-408 inapplicable to structured settlements; but until appropriate corrective amendments are in effect nationwide, the parties to a qualified assignment may find it advisable to avoid designating as governing law the law of a state that has not yet enacted such amendments.

11. **Description of Periodic Payments.** The Periodic Payments are as set forth in attached Addendum No. 1, which is hereby incorporated in and made a part of this Agreement.

This Qualified Assignment Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor (1): __The State of New York__

By: _____         ɛ ᴄᴀᴡ,ᴀᴄᴍᴀᴇ ʙᴜᴇᴇᴠᴀ
     Authorized Representative(s)

Title: __Assistant Attorney General__

Assignee: __Pacific Life & Annuity Services, Inc.__

By: _____
     Authorized Representative

Title: _____

Assignee: __Pacific Life & Annuity Services, Inc.__

By: _____
     Authorized Representative

Title: __Assistant Secretary__

# Addendum No. 1
## Description of Periodic Payments

Payee (1):  Cori DuVall

Benefit(s):  1. Life Certain Annuity - $1,824.94 for life, payable monthly, guaranteed for 50 year(s), beginning on 01/01/2012, increasing at a rate of 2.50% compounded annually, with the last guaranteed payment on 12/01/2061.
2. Period Certain Annuity - $7,500.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2026, with the last guaranteed payment on 08/24/2026.
3. Period Certain Annuity - $10,000.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2031, with the last guaranteed payment on 08/24/2031.
4. Period Certain Annuity - $12,500.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2036, with the last guaranteed payment on 08/24/2036.
5. Period Certain Annuity - $50,000.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2041, with the last guaranteed payment on 08/24/2041.

Initials

Assignor:  _(C C·Y)_

Assignee:

E26104-11A
Exp 1/12

No. 20111405

# Statement of Irrevocable Guarantee

Claimant: CORI DUVALL

Date of Qualified Assignment: October 18, 2011

Pacific LifeCorp (PLC), a stock holding company domiciled in the State of Delaware, hereby states and represents as follows:

*Whereas*, PLC has created Pacific Life & Annuity Services, Inc. (PLASI), a wholly-owned subsidiary domiciled in the State of Colorado, to act as assignee and third-party owner with respect to Qualified Assignments as provided in Section 130(c) of the Internal Revenue Code;

*Whereas*, PLASI has entered into a Qualified Assignment in the above referenced case; and

*Whereas*, PLC guarantees all of the obligations of PLASI, including the above referenced obligation.

*Now, therefore*, PLC states that if PLASI shall fail to make any payment as assumed under said Qualified Assignment, then PLC, by virtue of said guarantee of all of the obligations of PLASI, shall make such payment as and when due.

This statement is executed and signed this ___18th___ day of ___October___, ___2011___

Pacific LifeCorp

Jane M. Guon
Vice President and Corporate Secretary



# PACIFIC LIFE
## & ANNUITY COMPANY

(A Stock Insurance Company)
Administrative Office:
700 Newport Center Drive, Newport Beach, California 92660

## SINGLE PREMIUM SETTLEMENT ANNUITY

### POLICY DATA

Owner: **PACIFIC LIFE & ANNUITY SERVICES, INC.**

Policy Number: **20111405**

Measuring Lives: **CORI DUVALL**

Issue Date: **October 18, 2011**

**Annuity Payments to be Made to Owner's Designee**

Pacific Life & Annuity Company, an Arizona corporation, ("the Company") will pay annuity payments to the policy owner, or such person(s) as the policy owner may designate, subject to the provisions of this and the following pages which are made a part of this policy, according to the attached Schedule of Benefits.

**READ YOUR POLICY CAREFULLY.** This policy is a legal contract between the policy owner and the Company. Pacific Life & Annuity Company is a stockholder owned company. As such, purchasing and owning a Pacific Life & Annuity Company policy does not confer any membership rights nor ownership rights in Pacific Life & Annuity Company or any other company affiliated with Pacific Life & Annuity Company.

**Free Look Right** -- At any time within 10 days after you receive this policy, you may return it to us or the broker through whom you bought it. This policy will then be deemed void from the Issue Date. We will refund any premium paid less any annuity payments made.

This policy is executed for the Company at its Administrative Office at Newport Beach, California, to be effective on the Issue Date.

Chairman and Chief Executive Officer

Secretary

**Single Premium Settlement Annuity**
**Immediate Annuity -- No Cash Value**
**Non-Participating -- No Annual Dividends**
**Annuity Payments Specified in Schedule**

## SCHEDULE OF BENEFITS

Measuring Life: CORI DUVALL
Policy/Certificate No.: 81014-05862

**(Please see Application.)**

------------------------------------------- END -------------------------------------------

**NO BENEFITS, INCLUDING ANY DEATH BENEFITS, ARE PAYABLE EXCEPT ON THE DATES AND IN THE AMOUNTS SET FORTH ABOVE**

# READ YOUR POLICY CAREFULLY

## GENERAL PROVISIONS

### Cash Values

This policy does not have cash or surrender values and cannot be surrendered in exchange for a lump sum.

### Issue Date

The Issue Date will be used to determine policy anniversaries and policy years.

### Owner of Policy

The owner of this policy will be entitled to the rights granted by this policy or allowed by the Company under this policy. If the owner is a partnership, the rights belong to the partnership as it exists when a right is exercised. If the owner is an individual, upon the death of the owner, the rights belong to the executor or administrator of the owner's estate unless otherwise provided in this policy.

### Change of Designation

The owner has the right at any time to designate to whom annuity payments will be made. A change of designation may only be made by filing a satisfactory written notice with the Company. A change of designation will not be in effect until recorded at the Administrative Office of the Company. The change of designation will be retroactive to the date the notice was signed by the owner. Any payment made before the Company records a change of designation will not be changed.

### Incontestability

This policy will be incontestable from its Issue Date.

### Misstatement of Age or Sex

If the age and/or sex of a Measuring Life has been incorrectly stated, any amount payable under this policy shall be such as the premium paid would have purchased at the correct age and/or sex according to the rate used by the Company to originally purchase the benefits. Any underpayments or overpayments made by the Company shall be added to or deducted from the payments to be made after the adjustment with interest at 6% per annum.

## Change of Owner

An assignment of this policy will not be binding on the Company until it is recorded at its Administrative Office. The Company assumes no responsibility for the sufficiency or validity of any assignment. However, when an assignment is filed with the Company and recorded at the Administrative Office, the owner's rights will be subject to it.

## Payment of Proceeds

If the Schedule of Benefits provides for the payment of benefits as long as a Measuring Life shall live, the Company has the right before each payment is made to require due proof that the Measuring Life is living on the payment date. For such benefits, no fractional payment will be made for the period from a payment date to the date of death of a Measuring Life.

If the Schedule of Benefits provides for payment of any benefits by reason of the death of a Measuring Life, due proof of death of the Measuring Life must be submitted to the Administrative Office of the Company before such payment is made.

## Non-Participation

This policy does not participate in the profits or surplus of the Company. There are no annual dividends.

## The Contract

This policy is issued in consideration of the application and payment of the premium. This policy and the application for it, a copy of which is attached to and made a part of this policy, constitute the entire contract. All statements made by or for the applicant will be considered representations and not warranties. No statement shall void this policy or be used in defense of a claim unless it is contained in the written application and a copy of the application is attached to this policy when issued.

## Who is Authorized to Make Changes in this Policy

No agent has authority to change this policy or to waive any of its provisions. No change, modification, or addition to this policy shall be valid unless evidenced by written endorsement hereon or written amendment hereto signed by the president and secretary of the Company.

Application for Single Premium
Settlement Annuity

**PACIFIC LIFE**
& ANNUITY COMPANY
(A Stock Insurance Company)
Administrative Office:
700 Newport Center Drive
Newport Beach, CA 92660-6397

**1   Measuring Lives:**

a  Name: ___Carl_____ _____Middle_____ ___DuVall_____
   First                                Middle                  Last

   ___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_____   ___Female____   ___12/09/1987_____
   Social Security Number            Sex             Birthdate · Proof of Age Required

   Address: _6797 Jenks Road_____   __Canandaigua__   __New York__   __14424__
            Street and No              City              State          Zip Code

b  Name: _____ _____ _____
         First                    Middle           Last

   _____   _____   _____
   Social Security Number          Sex          Birthdate · Proof of Age Required

   Address: _____   _____   _____   _____
            Street and No              City         State        Zip Code

c  Name: _____ _____ _____
         First                    Middle           Last

   _____   _____   _____
   Social Security Number          Sex          Birthdate · Proof of Age Required

   Address: _____   _____   _____   _____
            Street and No              City         State        Zip Code

**2   Owner of Annuity:**
   Name: __Pacific Life & Annuity Services, Inc._____
   Address: __(refer all inquiries to 700 Newport Center Drive, Newport Beach, CA  92660-6397)_____
   The owner is  ☐ Individual   ☐ Partnership   ☒ Corporation   ☐ Trustee   Taxpayer ID/EIN: 912025652

**3   Annuity Plan and Schedule of Payments:** Please refer to Addendum No  1 for Schedule of Benefits and Payees.
   Additional information for annuity payments can be added on reverse side or by addendum.

**4   Amount Paid with this Application:** __Valuable Consideration__

This application will be part of the annuity issued by Pacific Life & Annuity Company
It is agreed that: (1) This application shall be the basis for any annuity issued on the application; (2) Any annuity issued on
this application shall not take effect until the policy  is delivered to the owner and the single premium has been paid in full;
(3) No information acquired by any representative of the Company shall be binding upon the Company unless set out in
writing in this application; and (4) No waiver or modification shall be binding upon the Company unless in writing and
signed by two authorized officers of the Company, acting together

Signed by the Applicant/Owner at __Denver, CO_____  on __8/24/1__

By: _____                    _____
    Applicant/Owner                          Witness (licensed Broker/Broker's Signature)

793

## Addendum No. 1
## Schedule of Benefits and Payees

Measuring
Life (a)

Cori DuVall
Payee:     Cori DuVall
Address:

Benefit(s):

1   Life with Certain Annuity - $1,824.94 for life, payable monthly, guaranteed for 50 year(s), beginning on 01/01/2012, increasing at a rate of 2.500% compounded annually, with the last guaranteed payment on 12/01/2061

2   Period Certain Annuity - $7,500.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2026, with the last guaranteed payment on 08/24/2026

3   Period Certain Annuity - $10,000.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2031, with the last guaranteed payment on 08/24/2031

4   Period Certain Annuity - $12,500.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2036, with the last guaranteed payment on 08/24/2036

5   Period Certain Annuity - $50,000.00 payable monthly, guaranteed for 2 month(s), beginning on 07/24/2041, with the last guaranteed payment on 08/24/2041