UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    Cori DuVall,                                  Bankruptcy Case No. 19-20179-PRW
                                                                         Chapter 13

                          Debtors,
_____

    Cori DuVall,

                          Plaintiff,

            vs.                                      Adversary Proceeding No. 19-02011-PRW

    County of Ontario, New York,
    John Doe,
    Jane Doe,

                          Defendant(s).
_____

**DECISION AND ORDER
DENYING MOTION OF ONTARIO COUNTY
TO OFFER EVIDENCE AT TRIAL
CHALLENGING THE ANNUITY
EXEMPTION CLAIMED BY THE DEBTOR**

PAUL R. WARREN, U.S.B.J.

      Once again, the Court is faced with an adversary proceeding, under § 548 of the Code, seeking to avoid the transfer of real property to Ontario County through an *in rem* tax foreclosure,.[1] The only issues to be resolved at trial are whether Ms. DuVall was insolvent (or rendered insolvent) at the time that the County took title to her home and whether the extinguishment of a $22,434.40

---

[1]    The Court has set aside similar transfers as constructively fraudulent conveyances in *Gunsalus v. Ontario County (In re Gunsalus)*, 613 B.R. 1 (Bankr. W.D.N.Y. 2020) and *Hampton v. Ontario County (In re Hampton)*, A.P. Case No. 17-2009-PRW, 2020 Bankr. LEXIS 447 (Bankr. W.D.N.Y. Feb. 19, 2020). Ontario County has appealed those decisions, which appeals remain pending at this time.

tax lien, in exchange for title to property worth $186,000, provided Ms. DuVall with reasonably equivalent value.

In the run-up to trial, the County filed a motion *in limine*, seeking a ruling as to whether it will be permitted to introduce expert testimony concerning the value of an annuity owned by Ms. DuVall. (ECF AP No. 25). But, at the heart of the motion, is the County's request for permission to challenge (at trial) the exemption claimed by Ms. DuVall for the entire value of the annuity. At no time did the County object to the exemptions claimed by Ms. DuVall or request an extension of time to do so, and the time to do so has long since passed.

For the reasons that follow, the Court will not permit the County to avoid the consequences of its failure to timely object to the exemption claimed in the annuity by Ms. DuVall. The motion *in limine* is, in all respects, **DENIED**.

## I.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O). The Court has jurisdiction under 28 U.S.C. § 1334.

## II.

## ISSUE

Having failed to object to an exemption claimed by Ms. DuVall in 100% of the value of an annuity and having failed to seek an extension of time to object to the claim of exemption within the time established by Rule 4003(b)(1) FRBP, should the County be permitted to attack the validity of that exemption, at the trial of Ms. DuVall's action seeking to set aside a transfer of title to the County as a constructively fraudulent conveyance?

2

Case 2-19-02011-PRW, Doc 30, Filed 09/29/20, Entered 09/29/20 14:22:09, Description: Main Document , Page 2 of 11

By operation of Rule 4003(b)(1), affording creditors 30 days from the initial meeting of creditors to either object to a claimed exemption or request an extension of time to object, absent which 11 U.S.C. § 522(l) establishes that property claimed as exempt is exempt, the Court answers the question in the negative.

### III.
### FACTS

Ms. DuVall filed a skeletal petition under Chapter 13 on March 1, 2019. (ECF BK No. 1). On March 13, 2019, the required statements, schedules, documents and Chapter 13 plan were filed, in keeping with Rule 1007(c). (ECF BK Nos. 12-15). On Schedule C, Ms. DuVall elected the federal exemptions, and claimed an exemption in 100% of the fair market value of an annuity, listing the value as "Unknown." (ECF BK No. 12 at 10). The exemption was claimed under § 522(d)(11)(E), which allows "a payment in compensation of loss of future earnings" to be claimed as fully exempt. In her Chapter 13 plan, Ms. DuVall conspicuously detailed her intention to bring an action under § 548 of the Code, to challenge the County's tax foreclosure against her real property located at 9097 County Road 14, West Bloomfield, New York. (ECF BK No. 18, Parts 2.4, 3.1, 8.1). The Ontario County Treasurer, the Ontario County Attorney, and Mr. DiPonzio, the County's outside counsel, were listed on the matrix of creditors, as a result of which they each received notice of the bankruptcy filing and a copy of Ms. DuVall's Chapter 13 plan. According to the certificate of service, that was accomplished on March 14, 2019. (ECF BK Nos. 1, 16, 18).

The meeting of creditors under § 341 was scheduled for April 15, 2019 and was held as scheduled. (ECF BK Nos. 8, 27). Under Rule 4003(b)(1), the County was required to file an objection to the exemption claimed by Ms. DuVall in the annuity, or file a motion requesting an

3

extension of time to object, on or before May 15, 2019. The County failed to take any action under Rule 4003(b)(1).

Ms. DuVall commenced this adversary proceeding on April 25, 2019. (ECF AP Nos. 1, 2). The County received personal service of the Summons and Complaint on May 3, 2019. (ECF AP No. 6). As of that date, the County still had 12 days to either object to Ms. DuVall's list of property claimed to be exempt or request that the Court extend the County's time to object. Instead, the County did nothing.

In the motion before the Court, the County repeatedly uses the phrase "exemption by ambush" as justification for the Court to ignore the plain edict of Rule 4003(b)(1)—a phrase that appears a half dozen times in the motion. (ECF AP No. 25 ¶¶ 4(b), 36, 45, 46, 53, 61). Ms. DuVall counters by pointing out that the Chapter 13 plan gave the County clear and unambiguous notice of her intention to commence an action under § 548 of the Code, seeking to avoid transfer of title to her property to the County through an *in rem* tax foreclosure. (ECF AP No. 28 ¶¶ 50-54). Schedule C, listing the property Ms. DuVall claimed as exempt, disclosed the existence of the annuity and its purported exempt status under § 522(d)(11)(E). (ECF BK No. 12 at 10). The annuity was also listed as an asset in Schedule A/B. (*Id.* at 6).

The issue of whether Ms. DuVall was rendered insolvent by the involuntary transfer of title to her property to the County would most certainly be central to the adversary proceeding, because exempt property is not included in the tallying of a debtor's assets, for purposes of determining solvency. Rule 4003(b)(1) establishes a short time period for a party in interest, intent on challenging a debtor's claim of insolvency (a critical element in any § 548 action), to object to exemptions claimed by a debtor, or seek an extension of time to object. Having failed to act timely

4

(more to the point, having failed to act at all) under Rule 4003(b)(1), the County now seeks to object to Ms. DuVall's claimed exemptions at trial, by indirection.

## IV.

## DISCUSSION

### A. Why Are We Here?

Ms. DuVall failed to pay real estate taxes to Ontario County, amounting to approximately $22,000. (ECF AP No. 2 ¶ 1). As a consequence, the County commenced an *in rem* foreclosure action under Article 11 of the New York Real Property Tax Law. Under that statute, should the property owner not cure the payment default by the redemption date, the County is awarded title to the property in satisfaction of the debt. RPTL § 1136. If the property has value in excess of the outstanding tax debt, the County retains that surplus under New York law. Ms. DuVall alleges that the Property had a value of $186,000 (ECF BK No. 12 at 3, 11), title to which was taken by the County to satisfy a tax debt of approximately $22,000. (ECF AP No. 2 ¶ 1). Hoping to pay off the tax debt and recover title to the property, Ms. DuVall commenced an action under § 548 of the Code, asserting that the County's act of taking title constituted a constructively fraudulent transfer.[2] (*Id.*).

To succeed on her action, Ms. DuVall must prove that (1) she had an interest in the property, (2) a transfer of the property occurred within 2 years of the filing of her Chapter 13 petition, (3) she was insolvent at the time of the transfer or rendered insolvent by the transfer, and (4) she received less than reasonably equivalent value in exchange for the property transferred. 11 U.S.C. § 548(a)(1)(B). There is no dispute over the first two elements. The disputed elements, to be resolved at trial, are whether Ms. DuVall was rendered insolvent by the involuntary transfer of her

---

[2] Ms. DuVall's standing to bring this action is derived from § 522(h) of the Code.

5

property to the County and whether the County provided reasonably equivalent value in exchange for title to the property.

The motion before the Court is focused solely on the insolvency element. While a resolution of the motion in favor of Ms. DuVall will not guarantee that she can prove-up the insolvency factor,[3] a resolution of the motion in favor of the County might give rise to a significant obstacle to Ms. DuVall's ability to prove-up the insolvency factor, a necessary predicate to succeed on a cause of action under § 548(a)(1)(B). The reason lies in the definition of "insolvency" in § 101(32) of the Code. The "balance sheet test," under § 101(32), simply subtracts a debtor's debts from the value of the debtor's assets, to determine whether a debtor was solvent or insolvent. Critically, property that is listed by a debtor as being "exempt" is not included in tallying the value of the debtor's assets. 11 U.S.C. § 101(32)(A)(ii). Here, Ms. DuVall claimed 100% of the value of the annuity as exempt on Schedule C. By its motion, the County is ultimately attempting to bring the value of the annuity into the tally of Ms. DuVall's assets, to tip the balance sheet test in its favor.

**B. By Operation of Rule 4003(b)(1) and § 522(l) of the Code, the County Is Precluded from Challenging the Exemption Claimed by Ms. DuVall**

In an effort to avoid the consequences of Rule 4003(b)(1), the County repeatedly argues that it was "ambushed" by Ms. DuVall's claimed exemption in 100% of the value of the annuity she owns. (ECF AP No. 25 ¶¶ 4(b), 36, 45, 46, 53, 61). The County would like to argue at trial that the exemption should have been claimed as payment "on account of personal bodily injury" under § 522(d)(11)(D), the exempt value of which is capped at $25,150, and not as "a payment in compensation of loss of future earnings" under § 522(d)(11)(E), which exemption has no monetary

---

[3] At trial, Ms. DuVall must still introduce evidence of insolvency, as of the date that the County took title to her property, to carry her burden of proof on that issue.

cap. (*Id.* ¶¶ 47-50). However, despite receiving notice of the filing of the Chapter 13 petition, including a copy of the Chapter 13 plan—clearly indicating Ms. DuVall's intention to bring an action under § 548 seeking to set aside the result of the tax foreclosure—and despite being served with a summons and complaint initiating the § 548 action well in advance of the objection deadline under Rule 4003(b)(1), the County did not file an objection to the claimed exemption nor request an extension of time to investigate the annuity claimed as exempt.

Section 522(l) provides that "[u]nless a party in interest objects, the property claimed as exempt . . . is exempt." 11 U.S.C. § 522(l). The procedure and time for objecting to a claimed exemption is governed by Rule 4003(b)(1), which provides:

> [A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later. The court may, for cause, extend the time for filing objections if, before the time to object expires, a party in interest files a request for an extension.

Fed. R. Bankr. P. 4003(b)(1).

The Supreme Court is authorized to promulgate rules of procedure, under 28 U.S.C. §§ 2071-2077, which rules have the force and effect of law, absent legislative action by Congress. *See* https://www.uscourts.gov/rules-policies/about-rulemaking-process/how-rulemaking-process-works (last visited Sept. 24, 2020). Thus, the Federal Rules of Bankruptcy Procedure are not mere suggestions or easily movable impediments, as the County would have it, they are procedures adopted by the Supreme Court to implement the Bankruptcy Code and have the force of law.[4] Perhaps the hollowness of the County's position is belied by the fact that its motion is premised—

---

[4] It is ironic that the County bemoans the harsh result worked by Rule 4003(b)(1), while at the same time the County champions the harsh result worked on a property owner by Article 11 of the New York Real Property Tax Law. Under Article 11, a landowner can be stripped of title to and equity in real property, in exchange for the satisfaction of a tax debt many times less than the value of the real estate.

7

almost entirely—on a decision issued in *Wisotzke v. County of Ontario (In re Wisotzke)*, AP No. 10-2026, 2011 Bankr. LEXIS 321 (Bankr. W.D.N.Y. Feb. 4, 2011) (Ninfo, J.) (an earlier decision by the court in the *Wisotzke* adversary proceeding has no application to the motion before this Court).[5]

In *Wisotzke*, despite the fact that the property in question was listed in the schedules and claimed as exempt in Schedule C, and despite the fact that no party in interest had filed an objection or requested an extension of time to do so, the Court nonetheless allowed Ontario County to press a time-barred objection to the debtor's claimed exemption. The *Wisotzke* court skirted the clear mandate of Rule 4003(b)(1) by framing the issue as one of standing under § 522(h). While acknowledging that "[a]lthough the County was listed as a creditor and could have objected to the claimed [exemption]," the *Wisotzke* court used the phrase "exemption by ambush" as its rationale to avoid the time stricture imposed by Rule 4003(b)(1). *In re Wisotzke*, 2011 Bankr. LEXIS 321, at *21 & n.11.

Oddly, the *Wiskotzke* court did not even mention Rule 4003(b)(1), while entertaining the County's time-barred objection. That shortcoming would be reason enough for this Court to part company with *Wisotzke*. But there is an additional and compelling reason to do so. Neither the County, in its motion, nor (inexplicably) the *Wisotzke* court, in its decision, even mention the decision of the Supreme Court in *Taylor v. Freeland & Kronz*, 503 U.S. 638 (1992). The issue, as framed by the *Taylor* Court, was "whether the trustee may contest the validity of an exemption after the 30-day period [under Rule 4003] if the debtor had no colorable basis for claiming the exemption." *Taylor*, 503 U.S. at 639. The *Taylor* Court observed and held that:

---

[5] The other cases cited by the County are easily distinguishable, as those cases concern efforts by debtors to avoid judicial liens under § 522(f). The cases all pre-date the adoption of Rule 4003(d), applicable specifically to motions under § 522(f). Neither the cases cited by the County nor Rule 4003(d) have any relevance to this case.

8

> The parties agree that [the debtor] did not have a right to exempt more than a small portion of [proceeds from an employment discrimination claim] either under state law or under the federal exemptions specified in § 522(d). [The debtor] in fact claimed the full amount as exempt. [The trustee], as a result, apparently could have made a valid objection under § 522(l) and Rule 4003 if he had acted promptly. We hold, however, that his failure to do so prevents him from challenging the validity of the exemption now.

*Id.* at 642. The *Taylor* Court declared that:

> Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality. . . . If [the trustee] did not know the value of the potential proceeds of the lawsuit, he could have sought a hearing on the issue, . . . or he could have asked the Bankruptcy Court for an extension of time to object . . . . Having done neither, [the trustee] cannot now seek to deprive [the debtor] of the exemption.

*Id.* at 644.

The *Taylor* Court flatly rejected the parade of horribles—predicted by the *Taylor* trustee, if the Supreme Court did not recognize a good faith exception to Rule 4003(b)—as a reason to limit the finality established by § 522(l). A similar parade of horribles is predicted by Ontario County, as a reason for this Court to ignore Rule 4003(b)(1). (ECF AP No. 25 ¶¶ 53-62). *Taylor* also rejected the notion that an "exemption by declaration"—here, labeled by the County as an "exemption by ambush"—could serve as a basis to limit application of § 522(l). *Taylor*, 503 U.S. at 644. Both of those arguments by Ontario County in support of its motion are foreclosed by the holding in *Taylor*. And, given the holding of the Supreme Court in *Taylor*, the *Wisotzke* court's holding is a mystery. As the Supreme Court has instructed "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982). Because the *Wisotzke* court failed to address—or even acknowledge—the impact of Rule

9

4003(b)(1), § 522(l), and the Supreme Court holding in *Taylor*, the holding in *Wisotzke* is tenuous, at best. This Court rejects the holding of the *Wisotzke* court.[6]

Here, Ms. DuVall filed schedules disclosing the annuity as an asset, with the value listed as "Unknown." That annuity was listed on Schedule C and claimed to be 100% exempt under § 522(d)(11)(E). No amendment to the schedules was ever filed. The Chapter 13 plan, a copy of which was served on the County, unambiguously stated Ms. DuVall's intention to bring an action under § 548, to set aside the transfer of title to the County as fraudulent. The § 341 meeting of creditors was closed on April 16, 2019. By operation of Rule 4003(b)(1), as a party in interest, the County had until May 15, 2019 to either object to the exemptions claimed by Ms. DuVall or to file a motion requesting an extension of time to investigate the merits of the claimed exemption. In addition, the County was served with the summons and complaint, initiating this adversary proceeding, at a point in time when there remained 12 days to take action under Rule 4003(b)(1). By operation of § 522(l) of the Code, the property claimed as exempt became exempt on May 16, 2019. The County was not "ambushed." It dropped the ball and let the deadline to object pass.

The County attempts to avoid the consequences of its inaction by arguing that, because the transfer of title to the County took place on March 7, 2017 and Ms. DuVall did not file the Chapter 13 petition until March 1, 2019, the Court is free to examine whether Ms. DuVall "could have" claimed an exemption in the annuity under § 522(d)(11)(E). (ECF AP No. 25 ¶¶ 40-52). This is the identical argument the County dangled before the Court in *Wisotzke*—which the *Wisotzke* court accepted. This Court rejects the County's Wellsian time travel argument.[7] The County is stuck

---

[6] In the 9-years since the *Wisotzke* court issued its decision, not a single court has cited it with approval. The only court that has cited *Wisotzke* disagreed with its reasoning and declined to follow its holding. *In re Cutignola*, 450 B.R. 445, 449 (Bankr. S.D.N.Y. 2011).

[7] H. G. Wells, *The Time Machine*, (William Heinemann 1895).

10

with the "unwelcome results" occasioned by its failure to act timely under Rule 4003(b)(1), as the *Taylor* Court explicitly held. The County cannot do, by indirection, what it cannot do directly—namely, challenge the validity of the exemption in the annuity claimed by Ms. DuVall under § 522(d)(11)(E). As a consequence, the value of that annuity will be excluded from the insolvency calculation under § 101(32).[8]

The County's motion requesting that its expert witness, Dr. Javier Espinosa, be permitted to testify as to the value of the annuity at trial is **DENIED**, under Rule 401 FRE. The County's motion, requesting permission to challenge the validity of the exemption claimed by Ms. DuVall in the annuity, is **DENIED**, as time barred by 11 U.S.C. § 522(l) and Rule 4003(b)(1) FRBP and under the binding precedent established by the Supreme Court in *Taylor*.

V.

## CONCLUSION

The motion *in limine* by the County of Ontario is in all respects **DENIED**. The trial of this adversary proceeding, limited to the issues of whether Ms. DuVall was rendered insolvent by the taking of her property by the County and whether the County gave reasonably equivalent value in exchange for the property, will be conducted by Zoom for Government. An Order, scheduling the date for trial and procedures for the trial to be conducted by Zoom for Government, will be issued by the Court promptly.

**IT IS SO ORDERED.**

DATED: September 29, 2020 _____/s/_____
      Rochester, New York        HON. PAUL R. WARREN
                                    United States Bankruptcy Judge

---

[8]    The Court presumes that Ms. DuVall will rely on principles of retrojection in attempting to demonstrate her financial condition as of March 7, 2017.