UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

      Cori DuVall,                                 Bankruptcy Case No. 19-20179-PRW
                                                     Chapter 13

                  Debtor,

_____

      Cori DuVall

                  Plaintiff,

         vs.                                  Adversary Proceeding No. 19-2011-PRW

      County of Ontario, New York,
      John Doe,
      Jane Doe,

                  Defendants.

_____


**DECISION AND ORDER
AVOIDING TRANSFER OF REAL PROPERTY
UNDER 11 U.S.C. § 522(h) AND § 548(a)(1)(B),
RESTORING TO DEBTOR TITLE TO
REAL PROPERTY UNDER 11 U.S.C. § 550(a)**

PAUL R. WARREN, U.S.B.J.

      Cori DuVall filed a Chapter 13 petition on March 1, 2019. A few weeks later, Ms. DuVall

commenced this adversary proceeding against Ontario County, under 11 U.S.C. §§ 522(h) and

548(a)(1)(B), seeking to avoid, as a constructively fraudulent transfer, the involuntary transfer of

title to her farm to the County. The transfer of title to the County was accomplished through a real

property tax foreclosure action, brought by the County under Article 11 of New York Real Property

Tax Law, by which the County sought to collect approximately $22,400 in past-due property taxes.

At the time the County acquired title, the property was worth considerably more than the

outstanding tax bill. As a remedy, Ms. DuVall requests that title to the farm be restored to her, under 11 U.S.C. § 550(a), either by cancellation of the Treasurer's Deed held by the County or by way of a deed from the County. The Court conducted a trial of this action by Zoom for Government on November 17, 2020. The parties filed their post-trial briefs on January 15, 2021, at which time the matter was taken under submission. For the reasons that follow, the relief sought by Ms. DuVall in her Complaint is **GRANTED**.

# I.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (H) and (O). The Court has jurisdiction under 28 U.S.C. § 1334. The parties expressly consented to the entry of a final judgment by this Court. (ECF AP No. 9 ¶ 8).[1] The Court held a trial with respect to the disputed facts on November 18, 2020.[2] Under Rule 52(a)(1) FRCP, made applicable to this proceeding by Rule 7052 FRBP, this decision sets out the Court's specific findings of fact, based on the evidence introduced at trial and the uncontested facts as stipulated by the parties, together with the Court's conclusions of law. The Court will enter a final judgment in a separate document as required by Rule 58(a) FRCP, made applicable to this adversary proceeding by Rule 7058 FRBP.

---

[1]     References to the docket for the adversary proceeding (Case No. 19-2011) are identified as "ECF AP."

[2]     Trial was originally scheduled for March 24, 2020, but was adjourned due to the onset of the Covid-19 pandemic. (ECF AP No. 21).

## II.

## ISSUES

The two issues before the Court are: (1) whether the County provided reasonably equivalent value to Ms. DuVall, by satisfying a tax lien of approximately $22,400 in exchange for the transfer of absolute title to the farm; and (2) whether Ms. DuVall was insolvent at the time of the transfer of title to the farm or was rendered insolvent as a result of that transfer.

Based on the evidence introduced at trial and the uncontested facts in the record, the Court finds that (1) the County did not provide reasonably equivalent value in exchange for title to Ms. DuVall's farm and (2) Ms. DuVall was rendered insolvent by the transfer of the farm.

## III.

## FINDINGS OF FACT[3]

### A. Fair Market Value of the Property

The real property at issue is located at 9097 County Road 14 in the Town of Honeoye Falls, Ontario County, New York, and consists of an approximately 50-acre farm on which sits a dilapidated single-family home. The farm has been in Ms. DuVall's family for over 30 years. (ECF AP No. 2 ¶ 22). On December 29, 2014, Ms. DuVall was deeded the farm by her mother. (ECF AP No. 36 ¶ 1). Ms. DuVall failed to pay property taxes on the property in the amount of $22,434.40 in total. (*Id.* ¶ 5).

---

[3] The findings of fact are based on the Complaint and Answer, testimony and exhibits introduced at trial, in addition to facts not in dispute as a result of stipulations between the parties. (ECF AP Nos. 2, 7, 36). Ms. DuVall testified at trial. Having had the opportunity to observe this testimony, the Court found Ms. DuVall to be forthcoming and credible.

3

As a result, the County commenced a tax foreclosure under Article 11 of New York Real Property Tax Law ("RPTL"), by serving a notice as required by RPTL § 1125(1)(a). (ECF AP No. 7 ¶ 25). The notice informed Ms. DuVall that the deadline to redeem the farm from the tax foreclosure, by fully paying the delinquent taxes, was January 13, 2017. (ECF AP No. 2 ¶ 25). Ms. DuVall neither filed an answer in the state court foreclosure action nor paid the delinquent taxes prior to the January 13, 2017 redemption deadline. (*Id.* ¶¶ 25-27). The County Court in and for Ontario County granted the County a default judgment of foreclosure, which judgment was filed March 7, 2017. (ECF AP No. 36 ¶ 2). The judgment of foreclosure awarded the County immediate possession of and title to Ms. Duvall's family farm, in exchange for which the $22,434.40 tax lien was satisfied. There was no mortgage on the farm and no other liens encumbered the property.

On May 17, 2017, the County conducted a post-foreclosure auction sale of the farm, under RPTL § 1162. (*Id.* ¶ 6). At the time of the post-foreclosure auction sale, Ms. DuVall had already been stripped of title to the farm. The County was selling its fee interest in the farm. Under New York law, the County was entitled to keep any and all proceeds resulting from the auction sale, after satisfaction of the tax lien. *See* RPTL § 1136. A price of $91,000 was bid by a third party, and accepted by the County for the farm, to satisfy a tax lien of $22,434.40.[4] (ECF No. 36 ¶ 6). Under New York law, the County is entitled to keep 100% of the surplus—amounting to more than

---

[4] The tax foreclosure against Ms. DuVall's farm was part of the same "batch" of tax foreclosures that included the property owned by Brenda and Joseph Hampton. *See In re Hampton*, Case No. 17-2049-PRW, 2020 Bankr. LEXIS 447 (Bankr. W.D.N.Y. Feb. 19, 2020) (Warren, B.J.). However, unlike the Hampton foreclosure, the County was not required to notify bidders that title to the farm was in dispute, because this adversary proceeding had not yet been filed—although the granting of the default judgment was on appeal in the state courts. As a result, the amount bid at auction for Ms. DuVall's farm is less likely to have been "chilled" as may have been the case in the Hampton foreclosure, making the amount bid a fairly reliable indication of the value of the farm.

4

$69,500. The County reaped a sizeable windfall, while Ms. DuVall lost 100% of her equity in the farm, all in keeping with state law.

Here, Ms. DuVall did not rely on an appraiser's valuation in attempting to establish the fair market value of the farm.[5] Instead, Ms. DuVall relied on the amount bid at public auction as evidence of the fair market value of the farm. The parties stipulated that the successful bid was for $91,000. (*Id.*). The Court finds that, on the evidence introduced at trial, the amount bid at auction is the best evidence of the fair market value of the farm as of the date of the auction.[6] Based on the evidence in the record, the Court finds that the fair market value of the farm, at the time of the entry of the foreclosure judgment in favor of the County, was $91,000. In exchange for the transfer of title to the farm, Ms. DuVall received only forgiveness of a tax lien totaling $22,434.40. Expunging a tax lien of $24,434.40, in exchange for a farm worth $91,000, represents a purchase price equal to 24.65% of the fair market value of the farm.

## B. Financial Condition of Ms. DuVall on the Date of Transfer

The County challenges the assertion that Ms. DuVall was insolvent on the date of the transfer of the farm. Under 11 U.S.C. § 101(32)(A), a debtor is considered insolvent if "the sum of [the debtor's] debts is greater than all of [the debtor's] property." The analysis under this "balance sheet test" excludes "property that *may be* exempted from property of the estate under section 522." 11 U.S.C. § 101(32)(A)(ii) (emphasis added); *see also In re People's Power & Gas, LLC*, Adv. Pro. No. 16-05027, 2019 Bankr. LEXIS 3508, at *10-11 (Bankr. D. Conn. Nov. 13, 2019).

---

[5]     Although an appraisal report was pre-marked for identification purposes by Ms. DuVall, the author of the report did not appear at trial to testify. As a result, the appraisal report was neither offered nor received in evidence.

[6]     In *Hampton v. Ontario Cty.*, 588 B.R. 671, 677 (W.D.N.Y. 2018), the District Court observed "if anything, the sale prices [at auction] are evidence of the properties' worth."

Evidence introduced at trial demonstrates that, with the exception of a vehicle she did not own on March 7, 2017, the value of Ms. DuVall's assets on March 7, 2017 was the same as on March 1, 2019. (Tr. at 10:15-20:14). For purposes of the solvency analysis, the County asserts that Ms. DuVall's assets on March 7, 2017, "were the M&T checking account with a balance of $1,319.28, less the $100 claimed exemption, for a total of $1,219.28." (ECF AP No. 42-1, Proposed Findings of Fact ¶ 14). According to Ms. DuVall, the M&T checking account should not be included among her assets as of March 7, 2017 because, although Ms. DuVall only claimed a $100 exemption in the M&T account upon the filing of her bankruptcy petition, the entire amount could have been exempted under 11 U.S.C. § 522(d)(5). (ECF AP No. 41 at 9).

For purposes of the balance sheet test, Ms. DuVall has demonstrated that the full amount of her M&T checking account "may be exempted." (*Id.* at 8). Notwithstanding the value of the farm, the value of Ms. DuVall's non-exempt assets was $0 at the time of the transfer of the farm to the County. Accordingly, for purposes of the insolvency analysis, it is only necessary that Ms. DuVall demonstrate that she owed at least $1.00 in debt, in order to show that she was rendered insolvent by the transfer of the farm. Even without consideration of the disputed evidence regarding debts owed to various medical providers, the parties did agree that the evidence shows that Ms. DuVall owed $711.29 to CBJ Credit Recovery on behalf of Canandaigua Medical Group, PC. (ECF AP No. 41 at 10; ECF No. AP 42-1, Proposed Conclusions of Law ¶ 3). Thus, Ms. DuVall's debts exceeded the value of her non-exempt assets by at least $711.29. The Court finds that Ms. DuVall was rendered insolvent by the transfer of title to the farm to the County.

6

# V.

# CONCLUSIONS OF LAW[7]

## A.  <u>Ms. DuVall Has Standing to Bring this Action</u>

The County asserts, as its Fourth Affirmative Defense, that Ms. DuVall does not have standing to bring this action.  The County unsuccessfully raised that identical defense in two prior adversary proceedings.  *See Gunsalus v. Ontario Cty.*, 572 B.R. 302 (Bankr. W.D.N.Y. 2017), *rev'd sub nom. Hampton v. Ontario Cty.*, 588 B.R. 671 (W.D.N.Y. 2018), *on remand two separate decisions issued*, *Gunsalus v. Ontario Cty.*, 613 B.R. 1 (Bankr. W.D.N.Y. 2020); *Hampton v. Ontario Cty.*, Case No. 17-2009, 2020 Bankr. LEXIS 447 (Bankr. W.D.N.Y. Feb. 19, 2020).  And the District Court flatly rejected the County's argument.  *See Hampon v. Ontario Cty.*, 588 B.R. 671, 674 (W.D.N.Y. 2018) (Geraci, C.J.).

Here, Ms. DuVall properly claimed the federal homestead exemption under § 522(d)(1) of the Code.  As the District Court held:

> Under the plain language of Section 522(h), debtors who can exempt property have standing to bring avoidance actions. . . . [T]he County interprets Section 522(c)(2)(B) as barring the Appellants from claiming the federal homestead exemption, when it merely provides that exempt property remains liable for a tax lien.  *See* 11 U.S.C. § 522(c)(2)(B).  [The Debtors are] not attempting to avoid paying the tax liens on their respective properties; they are attempting to avoid a transfer of the property.

*Id.* (internal citations omitted).

---

[7]      To the extent the legal analysis is the same, parts of this decision mirror this Court's decision in *Hampton v. Ontario Cty.*, Case No. 17-2009, 2020 Bankr. LEXIS 447 (Bankr. W.D.N.Y. Feb. 19, 2020).  Where appropriate, the Court incorporates portions of the *Hampton* decision here, without citation, and substitutes Ms. DuVall's facts for the Hamptons'.

The District Court held that, where a debtor does not seek to avoid a tax lien under § 545, but instead is challenging the tax sale as constructively fraudulent under § 548, § 522(c)(2)(B) does not negate their standing under § 522(h). *Id.* Here, Ms. DuVall is seeking to avoid the tax sale as a constructively fraudulent transfer under § 548 of the Code. The situation here is identical to that presented to the District Court in *Hampton*. Under the binding precedent established by *Hampton*, Ms. DuVall does have standing to bring this action.[8] The County's Fourth Affirmative Defense is, therefore, stricken under Rule 12(f)(1) FRCP.

**B. The Avoidance of the Constructively Fraudulent Transfer is in Keeping with the Purposes of the Bankruptcy Code**

The County asserts, as its Third Affirmative Defense, that resolving this action in favor of Ms. DuVall will not benefit the creditors, it will only benefit Ms. DuVall. Again, apparently using a cookie-cutter methodology, the County asserted an identical affirmative defense in *Hampton*. This Court flatly rejected the County's argument in *Hampton*. The Court flatly rejects the County's argument here, as well. As this Court previously held:

> As the County would have it, if property that is the subject of a § 548 avoidance action is not *liquidated* solely for a dollar-for-dollar benefit to the creditors, then resort to the Code's fraudulent transfer provisions is improper. The County's myopic view—which this Court flatly rejects—ignores the larger purpose served by the bankruptcy system. "[T]he broader purposes of the Bankruptcy Code and its fraudulent transfer provisions [is] to ensure *both* a fair distribution of the debtor's assets among creditors *and a fresh start for the debtor.*" *In re Smith*, 811 F.3d at 238 (emphasis added). "*Fraudulent transfer remedies can also help provide a fresh start to debtors*, at least in circumstances like this where the fraud is constructive." *Id.* at 239 (emphasis added). By retaining their fully-exempt surplus equity (and the affordable and modest housing it represents), while repaying the County and their

---

[8] The Court notes that the County has continued to raise this identical argument concerning standing in adversary proceedings filed after the District Court's holding in *Hampton*. Unless the holding in *Hampton* is modified by the District Court or reversed by the Second Circuit Court of Appeals, it is binding precedent on this Court.

unsecured creditors over 5 years through a Chapter 13 plan, the [debtor] will receive a fresh start, the County will receive full payment for both pre-petition and post-petition taxes, and unsecured creditors will receive a fair distribution.

*In re Hampton*, Case No. 17-2009, 2020 Bankr. LEXIS 447, at *20-21. For the reasons previously stated by this Court in *Hampton*, the County's Third Affirmative Defense is stricken under Rule 12(f)(1) FRCP.

## C. The Transfer Must Be Set Aside As Constructively Fraudulent Under 11 U.S.C. § 548(a)(1)(B)

The Bankruptcy Code empowers *a trustee* to set aside a constructively fraudulent conveyance, if the following elements are proved: (1) the debtor had an interest in the property; (2) a transfer of the property occurred within two years of the filing of the bankruptcy petition; (3) the debtor was insolvent at the time of the transfer or became insolvent as a result of the transfer; and (4) the debtor received less than reasonably equivalent value in exchange for the property transfer. 11 U.S.C. § 548(a)(1)(B). And under § 522(h) of the Code, *the debtor* may avoid the transfer of that property if: (1) the transfer was not voluntary; (2) the property was not concealed by the debtor; and (3) the trustee did not attempt to avoid the transfer. 11 U.S.C. § 522(h) and (g)(1). The party seeking to avoid a constructively fraudulent transfer has the burden of proving each element by a preponderance of the evidence. *Clinton Cty. Treasurer v. Wolinsky*, 511 B.R. 34, 38 (N.D.N.Y. 2014); *Schneider v. Barnard*, 508 B.R. 533, 547 (E.D.N.Y. 2014).

*In re Hampton*, Case No. 17-2009, 2020 Bankr. LEXIS 447, at *12-13.

Here, there is no dispute that Ms. DuVall has satisfied each of the statutory elements under § 522(h) of the Code—the transfer was not voluntary, the Property was not concealed, and the trustee did not attempt to avoid the transfer. Further, the parties have stipulated that Ms. DuVall has satisfied the first and second elements necessary to prevail in an action under § 548(a)(1)(B) of the Code—she had an interest in the Property and the transfer took place within 2 years of the filing of the bankruptcy petition. (ECF No. 36 ¶¶ 1-2). Only the insolvency and reasonably equivalent value elements are in dispute.

9

Turning to the insolvency element, the Court has made a finding of fact, based on the evidence introduced at trial, that Ms. DuVall was rendered insolvent by the involuntary transfer of title to the farm.  Application of the balance sheet test, established by § 101(32)(A) of the Code, leads the Court to conclude that Ms. DuVall had a negative net worth at the time of the loss of title to the farm.  Ms. DuVall, therefore, was either insolvent at the time of the transfer or was rendered insolvent by the involuntary transfer of title to the farm to the County.

That leaves only the last element under § 548(a)(1)(B) in question:  Did Ms. DuVall received reasonably equivalent value in exchange for the transfer of title to her farm to the County?

> The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received.  *Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997) (citing *Matter of Fairchild Aircraft Corp.*, 6 F.3d 1119, 1125-26 (5th Cir. 1993)).  [T]he formula for determining reasonably equivalent value is not a fixed mathematical formula; rather, the standard for reasonable equivalence should depend on all the facts of each case, an important element of which is fair market value.  *Id.* at 387 (quoting *In re Bundles*, 856 F.2d 815 (7th Cir. 1988)); *see also In re Smith*, 811 F.3d 228, 235 (7th Cir. 2016).  The Court must determine whether [Ms. Duvall's] economic position immediately after the tax foreclosure was equivalent to her economic position before the tax foreclosure.  *In re Clay*, Case No. 14-27268-GMH, 2015 Bankr. LEXIS 2039, at *7 (Bankr. E.D. Wis. June 19, 2015).

*In re Hampton*, Case No. 17-2009, 2020 Bankr. LEXIS 447, at *14-15 (internal quotation marks omitted).

The Court has determined, on the facts of this case, that the price bid by a third party at the public auction ($91,000) is the best evidence of the fair market value of Ms. DuVall's farm at the time of the transfer.  In exchange, Ms. Duvall received value in the form of relief from the County's $22,434.40 tax lien.  Under RPTL Article 11, the County was awarded absolute title to the farm and Ms. Duvall's equity of redemption was forfeited.  *See* RPTL § 1136.  Simply put, the County expunged its $22,434.40 tax lien in exchange for which it was awarded title to property worth

10

$91,000, based upon the price bid at auction. Expunging a $22,434.40 tax lien, in exchange for title to property worth $91,000, represents a purchase price equal to 24.65% of the value of the property. The Court holds that a purchase price equal to 24.65% of a property's fair market value is not reasonably equivalent to the value of the property.

Based on the evidence introduced at trial, the Court holds that Ms. DuVall has carried her burden of proving each element under § 548(a)(1)(B) by a preponderance of the evidence.[9] Consequently, the transfer of title to the farm must be set aside as constructively fraudulent.

**D. <u>Recovery of Title to Property Transferred is Appropriate Remedy</u>**

Once a transfer has been avoided, § 550 of the Code provides that the trustee (or debtor acting under § 522(h)) may recover for the benefit of the estate, the property transferred, or, if the court orders, the value of the property. 11 U.S.C. § 550(a). "Faithful to the language of the statute, the courts have given a very broad construction to the phrase 'benefit of the estate.' Benefit for purposes of § 550 includes both direct benefits to the estate (*e.g.*, an increased distribution) *and indirect ones (e.g., an increase in the probability of a successful reorganization).*" *In re Tronox Inc.*, 464 B.R. 606, 613-14 (Bankr. S.D.N.Y. 2012) (emphasis added). For purposes of § 550(a), the County is the "initial transferee" because, under RPTL § 1136, the County was awarded absolute title to the farm upon entry of the judgment of foreclosure. *See Wisotzke v. Ontario Cnty.*, 409 B.R. 20 (W.D.N.Y. 2009). Although the County did conduct a post-foreclosure auction two months after the County took title, the County did not transfer title to the farm to the successful third-party bidder. "[T]he initial transferee has no defense against liability under § 550." *In re Smith*, 811 F.3d 228, 244 (7th Cir. 2016).

---

[9]     By logical extension of the Court's holding, the County's First and Second Affirmative Defenses are stricken under Rule 12(f)(1) FRCP.

Here, the Court finds that return of title and possession of the farm to Ms. DuVall will provide an indirect but important benefit to the estate—it will greatly increase the probability of a successful reorganization under the Chapter 13 plan. The reconveyance of title and possession will result in providing Ms. DuVall with affordable housing, thereby greatly increasing her financial ability to make all plan payments, while keeping current her ongoing property taxes. The Court finds that the appropriate remedy under § 550(a) is to restore to Ms. DuVall possession of and absolute title to the Property.

Under § 550(a)(1) of the Code, the County is directed to take all steps necessary to restore Ms. DuVall's ownership and possessory rights to the farm, as set forth in the Deed recorded in the Ontario County Clerk's Office on January 12, 2015 at Index No. IN 2015 000289, Book/Page D 01331 0359. Any deed to the farm from the Ontario County Treasurer to the County of Ontario, issued by virtue of the March 7, 2017 judgment of foreclosure, is cancelled. As a result, the post-foreclosure auction and the incipient transfer of title to a third-party buyer is voided. The County is directed to refund to the third-party bidder any funds paid in connection with the auction. The tax lien that precipitated this litigation may remain in place, against the Property, until the pre-petition tax debt secured by that lien has been repaid through the Chapter 13 plan.

**E. Dismissal of Chapter 13 Case for Bad Faith Not Timely Raised**

At the conclusion of the trial, the County orally moved to dismiss Ms. DuVall's Chapter 13 bankruptcy case—and by extension this adversary proceeding—under 11 U.S.C. § 1307(c), as a bad faith filing. Both parties gave short shrift in their post-trial briefs to the procedural and substantive arguments surrounding this issue. Ms. DuVall challenges the County's assertions on procedural grounds, alleging that a motion under § 1307(c) is the "improper vehicle to seek to dismiss an adversary proceeding," and that it is improper to raise the issue for the first time at the conclusion of

12

the trial. (ECF AP No. 41-1 ¶ 39). "[C]ourt[s] may consider the merits of an affirmative defense . . . so long as the plaintiff has had an opportunity to respond." *In re Stage Presence, Inc.*, Case No. 18-cv-10662 (JSR), 2019 U.S. Dist. LEXIS 77111, at *31 (S.D.N.Y. May 6, 2019) (quoting *Astor Holdings, Inc. v. Roski*, 325 F. Supp. 2d 251, 260 (S.D.N.Y. 2003)) (internal quotation marks omitted). The County bases its argument concerning bad faith upon allegations set forth—for the first time—in its post-trial brief. (ECF AP No. 42 at 10-11). Such a tactic is tantamount to trial by ambush. Because Ms. DuVall did not have notice of and a full and fair opportunity to respond to the County's post-trial request for dismissal of the Chapter 13 case—made in a post-trial brief and not by motion—the Court exercises its discretion and declines to dismiss Ms. DuVall's bankruptcy case under 11 U.S.C. § 1307(c).

## VI.

## CONCLUSION

The transfer of the Property is **AVOIDED** under 11 U.S.C. § 522(h) and § 548(a)(1)(B). Any deed from the Ontario County Treasurer to the County, issued pursuant to the judgment of foreclosure, is **CANCELLED**. The post-foreclosure auction and incipient transfer of title from the County to a third-party buyer is **VOIDED**. The County is directed to refund to the third-party bidder any funds paid in connection with the auction. The County is directed to promptly convey all right, title, and interest in and to the farm to Ms. DuVall under 11 U.S.C. § 550(a). The County is permitted to reinstate its pre-petition tax lien against the farm (less credit for any payments made), until satisfied through the Chapter 13 plan. The Chapter 13 trustee is to schedule a hearing for confirmation of a Chapter 13 plan; at least 28 days' notice of that hearing is to be served on all creditors by counsel to Ms. DuVall.

13

The Court will enter a separate judgment avoiding the tax foreclosure, as required by Rule 58(a) FRCP and Rule 7058 FRBP. The Clerk of Court is to serve notice of entry of judgment as required by Rule 9022 FRBP. The Clerk of Court is directed to immediately close this adversary proceeding after entry of judgment in accordance with this decision.

**IT IS SO ORDERED.**

DATED: February 18, 2021          _____/s/_____
       Rochester, New York          HON. PAUL R. WARREN
                                        United States Bankruptcy Judge